[No. 6263–1–II.   Division Two.   March 7, 1984.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
‑Appellant, v. THOMAS LOU, ET AL,
Respondents.

*Timothy J. Whitters,* for appellant.

*Gerald L. Casey* and *Richard A. Gross,* for respondents.

[As amended by order of the Court of Appeals May 2, 1984.]

REED, J.—State Farm Mutual Automobile Insurance Company sought to recover $8,898.48 paid to Thomas Lou for medical expenses and lost wages arising from an automobile collision. The trial court granted Lou and Continental Insurance Company a summary judgment of dismissal. State Farm appeals. We reverse and remand for entry of judgment in favor of State Farm.

Lou, a passenger in a car driven by Robert Nelson, was injured when the Nelson car was rear ended by a car driven by Roy Justice. Nelson was insured by State Farm. As a passenger injured in an accident involving Nelson's car, Lou received $8,898.48 in medical expenses and lost wages under the State Farm policy's personal injury protection (PIP) endorsement. The policy provided that State Farm was subrogated to Lou's right to recover this sum from the party responsible for the injury. State Farm notified Continental Insurance Company, the carrier for Roy Justice, that it claimed an interest in any recovery Lou might make from Justice.

Lou then brought suit against Justice as the party responsible for his injuries. Lou's attorney offered to collect State Farm's subrogated interest as well, for a fee, but State Farm refused, stating that it would pursue intercompany arbitration or hire its own attorney. When trial of the suit against Justice was imminent, State Farm learned that Lou's attorney had no intention of protecting State Farm's subrogated interest.[1] State Farm had not yet arbitrated its claim against Justice's carrier, Continental. Lou's attorney

---

[1] The record is not entirely clear whether Lou included in the suit the amounts received from State Farm for medical expenses and wage loss. Because of events which followed, it is immaterial.

allowed State Farm to associate its own attorney with him to protect its subrogated interest. Then, without notifying State Farm or its attorney, Lou, Justice, and Continental settled the suit against Justice for $80,000. The limit of the Continental policy was $100,000. Lou gave Justice and Continental a release of all claims, and the suit was dismissed with prejudice. A hold harmless agreement was also entered into between Lou and Continental in which Lou's attorney, on behalf of Lou, agreed to hold Continental harmless from any claims of an insurer to rights of subrogation. State Farm, upon learning about the settlement after the fact, sought reimbursement of $8,898.48 from Lou. Lou refused. Lou's attorney has placed $8,898.48 of the settlement proceeds in a trust account pending resolution of the dispute with State Farm.

State Farm commenced this action against Lou and Continental to enforce its subrogation right. On cross motions for summary judgment, the trial court determined that it was undisputed Lou had not been made whole by the settlement. The court also determined that State Farm's right of subrogation had not been prejudiced by the settlement because it was undisputed Justice had no assets other than the Continental insurance policy with which to satisfy a judgment. Accordingly, under the rules of *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978) and *Metropolitan Life Ins. Co. v. Ritz*, 70 Wn.2d 317, 422 P.2d 780 (1967), the court dismissed State Farm's claims against both Lou and Continental. State Farm appeals. Because we find that the affidavits presented on summary judgment establish that Lou's settlement with Justice and Continental prejudiced State Farm's right of subrogation, we reverse and remand for entry of judgment in favor of State Farm against Lou. We need not determine Continental's liability to State Farm on these facts because of the existence of the hold harmless agreement between Lou and Continental and the trust account from which State Farm may be paid.

■ State Farm's right of subrogation arose both from

the insurance contract and in equity. Lou received benefits under the State Farm policy because, as an injured passenger, he came within the definition of an "insured" in the PIP endorsement. Lou became a third party intended beneficiary of the policy and as such was bound by the terms and conditions of the State Farm policy. *See Mattson v. Stone,* 32 Wn. App. 630, 648 P.2d 929 (1982). One of the stated conditions for payment of PIP benefits is that the recipient give State Farm the right of subrogation to the extent of benefits paid. Lou's attorney acknowledged the existence of this contract right by letter of May 1, 1979. In equity, the rule is that an insurer is entitled to reimbursement to the extent that its insured[2] recovers payment for the same loss from a tortfeasor responsible for the injury, but the insurer can recover only the excess which remains after the insured is fully compensated for the loss. *Thiringer,* 91 Wn.2d at 219. The equitable principle, based on unjust enrichment, is that an injured party is entitled to be made whole but should not be allowed to duplicate recovery. *Thiringer,* 91 Wn.2d at 220. Under both the insurance contract and equitable principles, State Farm had a subrogation interest in any recovery Lou might obtain from the party responsible for his injuries.

The rule that an insured is entitled to be made whole before the insurer is reimbursed from settlement proceeds applies only if the settlement did not prejudice the insurer's right of subrogation. *Metropolitan Life Ins. Co. v. Ritz, supra; Thiringer v. American Motors Ins. Co., supra.* An insured can avoid any possibility of prejudice to the insurer's rights by releasing the wrongdoer from all claims except the subrogated claim of the insurer. This Lou did not do. He executed a release of all claims, destroying State Farm's subrogation right. *See Metropolitan Life Ins. Co. v.*

---

[2]Lou was not an insured in the State Farm policy in the sense that he paid premiums for the coverage. However, we see no reason not to include within this rule a person who ultimately comes within the definition of an insured in the policy.

*Ritz,* 70 Wn.2d at 321.

█ An insurer is not necessarily prejudiced every time its subrogation right is cut off by a general release. If the settlement exhausts the wrongdoer's assets, the insurer could recover nothing more from the wrongdoer. In this event, the insurer would not be harmed by the insured's action. Lou's settlement for $80,000 of a $100,000 policy did not exhaust Justice's assets. Even assuming Justice's only asset was the Continental policy, Lou failed to take advantage of an additional $20,000 of the policy.

Lou argues that because of his attorney's fee agreement and the costs of trial, an $80,000 settlement before trial netted him the same as a $100,000 payment after trial. Cost–benefit analysis is irrelevant in this context. The inquiry is whether, after paying Lou $80,000, Justice's assets were exhausted. In this case, there was $20,000 more which Lou left on the settlement table. By unconditionally releasing Justice, Lou effectively placed this resource beyond the reach of State Farm.

Lou claims that waiver, estoppel and laches bar the enforcement of State Farm's subrogation right. We find no basis in the record for the application of any of these doctrines and decline to discuss them further.

Because the undisputed facts establish prejudice to State Farm, dismissal of its claim against Lou was improper. State Farm is entitled to judgment against Lou for $8,898.48.

We next address the issues raised with respect to attorney's fees and costs. State Farm claims that its insurance policy entitles it to recover from Lou attorney's fees and costs in addition to the $8,898.48 subrogated amount. Although we have determined that Lou was bound by the insurance contract's terms and conditions, the policy does not provide for the payment of expenses of suit in this situation. The policy provides for the collection of fees and costs only when the person to whom payment has been made makes no effort to collect from the party at fault,

thus necessitating action by the insurer to enforce its subrogation rights. Here, Lou has already recovered from the wrongdoer. State Farm is not entitled to attorney's fees and costs.

■ Lou claims that State Farm's recovery should be reduced by a pro rata share of the attorney's fees and costs he incurred in the action against Justice. The insurance policy contains no provision obligating State Farm to pay a share of expenses when the insured recovers from the wrongdoer. State Farm and Lou had no collateral agreement for the payment of expenses. In fact, State Farm always maintained that it did not want Lou's attorney to collect its subrogated amount. In the absence of an agreement, an insurer is obligated to pay a share of expenses only if it is benefited. *Richter, Wimberley & Ericson, P.S. v. Honore,* 29 Wn. App. 507, 628 P.2d 1311 (1980); *Pena v. Thorington,* 23 Wn. App. 277, 595 P.2d 61 (1979).

We find as a matter of law that there was no benefit to State Farm from the actions of Lou's attorney. State Farm repeatedly informed Lou's attorney that it did not want him to pursue its subrogation claim. Lou's attorney knew before he settled with Justice and Continental that State Farm had not yet recovered its subrogation claim. This is apparent from his allowing State Farm to associate its own counsel in the case. Lou's attorney admitted at oral argument that he knew a release of all claims would cut off State Farm's subrogation rights. Nevertheless, he negotiated a settlement with Justice and Continental, excluding State Farm's attorney from participation, and countenanced Lou's execution of a general release. State Farm was forced to bring this lawsuit to enforce its subrogation right. The actions of Lou's attorney were of no benefit to State Farm. Lou is not entitled to offset a proportion of his expenses in the Justice suit against State Farm's recovery.

Dismissal of State Farm's claim against Continental is affirmed. The summary judgment dismissing State Farm's claim against Lou is reversed, and this case is remanded for

entry of judgment in favor of State Farm against Lou for $8,898.48.

WORSWICK, A.C.J., and PETRIE, J., concur.