3 P.3d 761 (2000)
101 Wash.App. 360
Rebecca HAMM, Respondent,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.
No. 44891-9-I.
Court of Appeals of Washington, Division 1.
July 3, 2000.
*762 Robert Alex Mannheimer, Todd & Wakefield, Mark Robert Koenig, Pamela A. Okano, William Robert Hickman, Seattle, for Appellant.
Kenneth Barry Dore, Seattle, for Respondent.
WEBSTER, J.
After incurring legal expenses in arbitration over her underinsured motorist (UIM) claim against Appellant State Farm, the trial court awarded Respondent Rebecca Hamm a pro rata portion of those legal expenses under Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632 (1998). State Farm appeals the award of legal fees. We find that Mahler does not apply and find instead that this case is controlled by Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 876 P.2d 896 (1994), which held that a claimant-insured bears his or her own attorney fees for a UIM arbitration when a UIM insurer stands in the shoes of the uninsured tortfeasor. Thus, we reverse.

BACKGROUND
Hamm was injured in an automobile accident with an uninsured motorist. State Farm paid $8,669.71 in personal injury protection (PIP) benefits for Hamm's medical bills. Hamm made a UIM claim. After negotiations between Hamm and State Farm proved unsuccessful, Hamm demanded a UIM arbitration under the policy. Hamm incurred legal expenses by participating in the arbitration. The arbitrator determined that Hamm's reasonable and necessary medical expenses were $5,481.71 and her total damages were $16,000.
Pursuant to the policy, State Farm offset the $8,669.71 it had already paid in PIP benefits and tendered a check for the $7,330.29 balance. The parties agreed that the tender represented an uncontested amount of UIM benefits owed to Hamm but reserved the question whether Hamm was owed more.
Hamm filed an action in superior court for confirmation of the arbitration award. The court confirmed the total award but denied Hamm's request to enter judgment because of the dispute over the offset amount.
Hamm filed the present action seeking declaratory relief regarding the amount of the offset. She also requested that State Farm bear a share of the legal expenses incurred in obtaining the arbitration award. The parties filed cross motions for summary judgment. The trial court found that State Farm was entitled to offset the entire amount paid in PIP benefits. The trial court also found under Mahler that State Farm was required to share Hamm's legal expenses. The court awarded Hamm $3,582.53 in costs and fees.

STANDARD OF REVIEW
"When reviewing an order for summary judgment, we engage in the same inquiry as the trial court, and will affirm summary judgment if there is no genuine issue of *763 any material fact and the moving party is entitled to judgment as a matter of law." Wilson Court Ltd. Partnership v. Toni Maroni's, Inc., 134 Wash.2d 692, 698, 952 P.2d 590 (1998); see also CR 56(c). The question of law presented here is reviewed de novo. See id.

ANALYSIS
In Mahler, the Supreme Court interpreted a State Farm policy provision that required the insurance company to share pro rata the legal expenses of an insured who recovered from the tortfeasor if State Farm shared in that recovery. 135 Wash.2d at 421, 957 P.2d 632. The same provision appears in Hamm's policy, under the heading "Our Right to Recover Our Payments":
If the insured recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that per cent of the legal expenses that the amount we recover bears to the total recovery.....
CP at 192; Mahler, 135 Wash.2d at 419, 957 P.2d 632.
In Mahler, State Farm paid a portion of the injured insured's medical expenses under her PIP coverage. See 135 Wash.2d at 405, 957 P.2d 632. The insured sued the tortfeasor, who settled. See id. at 406, 957 P.2d 632. The insured agreed that State Farm was entitled to share in the settlement to the extent of the PIP benefits paid. See id. at 407, 957 P.2d 632. But when the insured insisted that State Farm share in the legal expenses she incurred in recovering from the tortfeasor, State Farm refused, claiming a policy exception to the above provision. See id. The dispute was arbitrated, resulting in an award to the insured. See id. at 407, 957 P.2d 632. State Farm requested a trial de novo, and the superior court entered summary judgment in the insured's favor. See id. at 407-08, 957 P.2d 632. On direct review, the Supreme Court held that State Farm was required under the policy to share in the insured's legal expenses if it wished to be reimbursed for its PIP payments. See id. at 424-25, 957 P.2d 632.
But Mahler does not control here. The Mahler court was interpreting a policy clause that applied specifically to the situation where the insured recovers from the tortfeasor. That is not the case here. Hamm's legal fees were expended in obtaining payment from State Farm for a UIM claim, not in obtaining an award from the tortfeasor.
We find that Hamm must bear her own legal expenses for the UIM arbitration. See Dayton, 124 Wash.2d at 281, 876 P.2d 896. In Dayton, the insured was injured in an automobile accident with an uninsured motorist, and Farmers paid the insured's medical bills under his PIP coverage. See id. at 278, 876 P.2d 896. The insured sought UIM benefits, but after negotiations over the value of the claim failed, he requested arbitration. See id. at 279, 876 P.2d 896. An arbitrator determined the amount that Farmers owed the insured, and the insured filed a petition in superior court seeking entry of judgment and attorney fees covering both the arbitration and the action to confirm the arbitration. See id. The trial court granted the petition, including the award of attorney fees. See id. The appeal brought by Farmers presented the question "whether attorney fees are recoverable in a UIM arbitration to determine damages." See id. The Supreme Court found that the trial court erred in awarding attorney fees:
When a tortfeasor carries insurance, the claimant insured bears his or her own attorney fees in the arbitration proceedings. Thus, when the UIM insurer stands in the shoes of the uninsured tortfeasor, the claimant insured should likewise bear his or her own attorney fees. Recovery of attorney fees in a UIM arbitration constitutes an amount greater than that available from an insured tortfeasor. This is not consistent with the purpose of UIM insurance, or the statutes governing UIM coverage.
See id. at 281, 876 P.2d 896 (internal citations omitted). We find that Dayton controls the similar scenario presented in this case and answers Hamm's public policy arguments regarding full compensation under UIM coverage.
Hamm argues that Winters v. State Farm Mut. Auto. Ins. Co., 99 Wash.App. 602, 994 P.2d 881 (2000), applies to this case. We disagree. In Winters, the fault-free insured *764 one of the drivers at fault and recovered $25,000 in settlement. Id. at 605, 994 P.2d 881. The insured then made a UIM claim against State Farm, which went to arbitration. Id. at 606, 994 P.2d 881. The arbitrator awarded the insured special damages of $8,271 and general damages of $32,000, for a total award of $40,271. Id. After deducting the $25,000 the insured received from the tortfeasor and $8,271 in PIP payments, State Farm paid the insured $7,000 in UIM benefits. See id.
The insured's policy with State Farm included the same clause at issue in this case, and in Mahler, that requires State Farm to share in the legal expenses of the insured's recovery from the tortfeasor if State Farm shares in that recovery. See Winters, 99 Wash.App.2d at 605, 994 P.2d 881. The insured in Winters argued that State Farm must pay a pro rata share of the legal expenses, including attorney fees, that she incurred in obtaining the $25,000 settlement and those incurred in the UIM arbitration. See id. at 609, 994 P.2d 881. The insured based her argument on the common fund doctrine, contending that the arbitration award of $40,271 created a common fund from which State Farm was reimbursed for its PIP advancements. See id.
The Winters court agreed, defining the common fund for the case involving an underinsured tortfeasor as consisting of the liability proceeds recovered from the tortfeasor's liability carrier and the UIM proceeds recovered from the PIP insured's UIM carrier. See id. at 612, 994 P.2d 881. Finding that the insurer benefited from the creation of the common fund when it recovered PIP payments, the court held that State Farm must pay a pro rata share of fees and costs incurred to litigate against the tortfeasor and to arbitrate against State Farm for UIM payment. See id. at 615-16, 994 P.2d 881.
But we distinguish Winters from the instant case.[1] In Winters, as in Mahler, the insured recovered from the tortfeasor, which triggered application of the policy provision. Here, Hamm did not recover from the party at fault. The common fund upon which the Winters court based its reasoning was created by a combination of liability proceeds and UIM proceeds. The common fund as defined by Winters is not created here where there are no liability proceeds.[2]
The policy provision upon which the Mahler and Winters opinions are based is not triggered here because the insured has not recovered from the party at fault. Dayton held that even where the UIM insurer stands in the shoes of the uninsured tortfeasor, the claimant-insured must bear his or her own attorney fees in a UIM arbitration. See 124 Wash.2d at 281, 876 P.2d 896. To require the insurer to pay expenses for a UIM arbitration constitutes an amount greater than that available from an insured tortfeasor and is not consistent with the purpose of UIM insurance or the statutes governing UIM coverage. See id. Thus, we reverse the trial court's award of attorney fees to Hamm and order the parties to bear their own legal expenses for the arbitration, in the trial court, and on appeal.
COX, J., and KENNEDY, J., concur.
NOTES
[1] State Farm argues vigorously that Winters is wrongly decided. Because we distinguish Winters factually, we need not address the soundness of its reasoning.
[2] We note, moreover, that Winters distinguished Dayton, which we follow here. See Winters, 994 P.2d at 889.